**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 7** |
| **JON A. GOLDMAN** | ) | |
| | ) | **Case No. 13-36045** |
| **Debtor.** | ) | |
| | ) | **Honorable Debra L. Thorne** |
| **ROBERT J. SIRAGUSA, individually and** | ) | |
| **as trustee for the ROBERT J. SIRAGUSA,** | ) | |
| **MD EMPLOYEE BENEFIT TRUST,** | ) | |
| **(formerly, Dermatology Associates of Bay** | ) | |
| **County, P.A., Defined Benefit Trust; DANA** | ) | |
| **SIRAGUSA; JULIE SIRAGUSA; AND** | ) | **Adversary No 13 A 1431** |
| **ROBERT JOSEPH SIRAGUSA** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **JON A. GOLDMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE SIRAGUSAS'
<u>MOTION FOR SUMMARY JUDGMENT</u>[1]**

Patrick G. Cooke, Esq.
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
312.321.9100
pcooke@smbtrials.com
ARDC No. 6229059

---

[1] Around the time this motion was to be filed, counsel for the parties conferred and settlement was discussed. The parties will continue to discuss resolution with their clients but in the interim, the parties agreed that Defendant will have the full amount of time granted by the Court to respond to this motion and the movants' reply time will be shortened so as to maintain the briefing schedule previously entered.

**Introduction**

This lawsuit arises out of the misrepresentations and fraudulent acts of the Debtor, Jon Goldman ("Goldman"), and his partner, Arturo Collazo ("Collazo"). On September 11, 2013, Goldman filed a Chapter 7 bankruptcy petition. The fraud occurred in connection with several development projects in the Chicagoland area and one large development project in Tempe, Arizona.[2] Goldman and Collazo were the developers of these projects and after being introduced to Robert J. Siragusa ("Robert"), extended the opportunity to Robert and his Employee Benefit Trust to invest with them through short-term loans, each earning 17-20% interest. See Statement of Undisputed Material Facts, hereinafter "SMF." Later, Dana Siragusa ("Dana") and Robert Joseph Siragusa ("Robb")[3] were also given the opportunity to invest, again through short-term, high interest-bearing loans. Unbeknownst to the Siragusas, shortly after obtaining their monies, the entities to which the loans were made were stripped of their assets – condominium units – and those same assets were transferred into newly-formed, debt-free entities owned exclusively by Goldman and Collazo.  SMF[4] at ¶¶ 4, 12, 20, 27, 35-44, 55, 58-59, 63.

In January 2009, Dana began investigating the condominium sales and the status of the properties to which the Siragusas loaned monies. It was only then the Siragusas discovered they were victims of Goldman's fraud, culminating in the revelation that the entities to which they loaned monies were nothing more than assetless shells. The condominium units whose sale

---

[2] Throughout this memorandum, the entities identified in the Notes that are the subject of this dispute are sometimes referenced as the "Borrowing LLCs."  The entities to which Goldman transferred assets of the Borrowing LLCs are referenced as the "Transferee LLCs".  Occasionally, the three (3) Chicago development projects are refenced as the "Chicago Projects" or "Chicago LLCs"; the Tempe, Arizona development project is referenced as the "Arizona Project."

[3] The individual Siragusa parties to this action and the Employee Benefit Trust are collectively referenced herein as the "Siragusas."

[4] "SMF" refers to the Statement of Material Facts filed herewith.

proceeds were to be used to pay the Siragusas had been transferred to unrelated entities exclusively owned by Goldman and his partner. SMF at ¶¶ 37, 40, 43.

### Argument

Summary judgment is appropriate where "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Solt*, Case No. 22-81099, 2023 WL 8833199, at *1 (Bankr. N.D. Ill. Dec. 20, 2023). This standard applies to bankruptcy proceedings through Fed. R. Bankr. P. 7056; *In re Solt*, Case No. 22-81099, 2023 WL 8833199, at *1 (Bankr. N.D. Ill. 2023). *See also Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010) "Once the moving party meets its burden, summary judgment is proper if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

A.    **Because There is Such Unity of Interest in Ownership and the Adherence to the Fiction of a Separate Enitity Will Promote Injustice, the Veils of the Limited Liability Companies Should Be Pierced.**

To pierce a corporate veil, one must demonstrate that: (1) there is such a unity of interest in ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation will promote injustice or inequitable circumstances. *Shakir v. Green Dot Builders, LLC* (*In re Shakir*), 643 B.R. 203, 213 (Bankr. N.D. Ill. 2022) (citing *Tower Inv'rs., LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill. App. Ct. 2007) and *People ex rel. Scott v. Pintozzi*, 277 N.E.2d 844, 851 (Ill. 1971).

Illinois courts have held that veil-piercing of limited liability companies is allowed based on theories of alter ego, fraud, or undercapitalization. *See Westmeyer v. Flynn*, 889 N.E.2d 671, 678 (Ill. App. Ct. 2008) (reversing dismissal of a veil-piercing action against a member of a Delaware limited liability company but finding that the result would be the same under Illinois law). *See also* 805 Ill.Comp.Stat. 180/10-10(d)(West 2008). Illinois bankruptcy courts have also held that veil-piercing of limited liability companies based on allegations of alter ego, fraud, or undercapitalization is allowed. *Denmar Builders, Inc. v. Suhadolnik (In re Suhadolnik)*, 2009 WL 2591338, at *4 (Bankr. C.D. Ill. 2009); *Brown v. Real Estate Resource Mgmt., LLC (In re Polo Builders, Inc.)*, 388 B.R. 338, 384 (Bankr. N.D. Ill. 2008); *Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 863, n.6 (Bankr.N.D. Ill. 2006).

**1. Unity of Interest in Ownership**

Illinois courts consider the following factors when determining whether there is sufficient "unity of interest" to justify disregarding the corporate form: (1) inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation; (4) nonfunctioning of the other officers or directors; (5) absence of corporate records; (6) commingling of funds; (7) diversion of assets from the corporation by or to a shareholder; (8) failure to maintain arm's length relationships among related entities; and (9) whether the corporation is a mere facade for the operation of the dominant shareholders. *In re Shakir*, 643 B.R. at 213 (citing *Jacobson v. Buffalo Rock Shooters Supply Inc.*, 664 N.E.2d 328, 331 (Ill.App.Ct. 1996)). Because there was such unity of interest and the entities were used in the commission of fraud, this Court should pierce the corporate/limited liability veils and impose liability against Goldman for the Siragusa loans.

**Inadequate Capitalization:** Goldman confirmed that the Chicago Projects were all undercapitalized. More specifically, Goldman ran out of money to complete the condominium conversion projects. As a result, Goldman made the decision to transfer the unsold units (or assets of the Chicago LLCs) to new entities exclusively owned by Goldman and Collazo. SMF at ¶¶ 4, 12, 20, 27. In other words, the entities to which the Siragusas loaned monies were stripped of their assets and transferred to entities that had no obligations to the Siragusas.

**Failure to Observe Corporate Formalities:** Though this factor is relaxed with respect to limited liability companies, no corporate formalities were maintained with respect to the Chicago LLCs. There were no meeting minutes, resolutions, etc. Goldman and his partner decided to strip away assets from the Chicago LLCs that had obligations to the Siragusas and transfer them to entities that had no such obligations. SMF at ¶¶ 4, 12, 20, 27.

**Insolvency of Debtor:** The LLCs' sole assets were the condominium units that were sold once converted. The monies generated from those sales were to pay off the first mortgagee and, thereafter, pay the Siragusas. With the unsold units stripped away and transferred from the Borrowing LLCs to Transferee LLCs, Goldman was able to give new lenders the appearance of unencumbered assets. Goldman's fraud was not confined to the Siragusas; he misled, deceived and defrauded lenders for new monies as well.

**Non-Functioning of Other Officers:** This factor generally has no application here insofar as Goldman and Collazo were the only two managers and members of the relevant LLCs.

**Absence Of Corporate Records:** As previously indicated, Goldman produced no meeting minutes, no resolutions, nothing by way of corporate documents. While the requirement for corporate records is relaxed with limited liability companies, there were very little, if any, here.

**Co-Mingling of Funds:** Goldman produced no bank records for any of the LLCs, though he maintained there were bank accounts. SMF at ¶¶ 47, 56. It was not possible to discern what funds belonging to the LLCs were co-mingled with Goldman's (or Collazo's). Nevertheless, this much is clear: Goldman paid himself monies before he paid the Siragusas, creditors who were to be paid immediately following the retirement of the first mortgages. SMF at ¶¶ 4-7, 12-14, 20-22, 26-29, 36-37, 41-42.

**Failure To Maintain Arms-length Relationship Among Related Entities:** Goldman transferred the assets of one LLC that he exclusively owned with Collazo to another that he owned exclusively with Collazo. SMF at ¶¶ 4, 12, 20, 27. No consideration was paid by the asset-acquiring or Transferee LLC. SMF at ¶¶ 55, 59. No consideration was requested.

**Façade For the Operation Of The Dominant Owners and Diversion of Corporate Assets:** Immediately after the first mortgagee was paid off, the Siragusas' loans were to be retired. The monies used to retire the Siragusa loans was to come from the sale of the condominium units, the sole assets of the Chicago LLCs. Rather than satisfying these debts, Goldman transferred the assets to be used for this purpose to different wholly owned entities. SMF at ¶¶ 4, 12, 20, 27. Goldman did not disclose the new entities to the Siragusas. SMF at ¶¶ 58, 60-63. Goldman did not inform the Siragusas that the assets from which their debts were to be retired were no longer owned by or under the control of the Borrowing LLCs. At bottom, Goldman diverted the LLC's assets to avoid paying the Siragusas and secure additional funding (also by fraud).

The Arizona Project was no different. CG Development Group LLC should similarly be pierced. The Arizona Project was grossly undercapitalized and ultimately surrendered by a deed-in-lieu of foreclosure agreement.

6

As for co-mingling of funds, failure to maintain arm's length relationships and diversion of assets, Goldman testified that the monies the Siragusas loaned to CG Development Group LLC were delivered to a different entity owned by Goldman and Collazo, Meridian Corners LLC, to acquire the Arizona Property. SMF at ¶¶ 37, 40, 43. Meridian Corners LLC was formed on November 9, 2005. SMF at ¶ 36. Goldman signed Promissory Notes in favor of the Siragusas, on behalf of CG Development Group on November 22, 2005, for a sum totaling $1 million. SMF at ¶¶ 31-32. At the time the Notes were signed, CG Development Group LLC had a Memorandum Purchase Agreement ("MPA") with Meridian Corners Apartments LLC, the prior owner and seller of the Arizona Property. SMF at ¶¶ 33-34.

On December 2, 2005, Goldman executed a document terminating MPA between Meridian Corners Apartments, LLC (Seller) and CG Development Group LLC (Buyer).  On December 2, 2005, Meridian Corners LLC – the Delaware LLC Goldman formed with Collazo on November 9, 2022 – closed on the purchase of the Arizona Property, using the Siragusas' $1 million as part of the acquisition. SMF at ¶¶ 35, 40.  Goldman never told the Siragusas that the monies they loaned to CG Development Group LLC were diverted to Meridian Corners LLC. SMF at ¶¶ 37, 39, 44. Goldman never told the Siragusas that the borrowing entity – CG Development Group LLC – never acquired the Arizona Property and its interest in the acquisition of the property was terminated by Goldman just ten (10) days after Goldman took possession of $1 million from the Siragusas. SMF at ¶¶ 31-35. The co-mingling of funds, diversion of assets and duplicity in orchestrating his fraud scheme was clear.  The unity of interest prong is satisfied as to CG Development Group LLC, just as it is for the Chicago LLCs.

## 2.   Prevention of Fraud and Avoidance of Injustice

As demonstrated above, the Siragusas were to have their loans repaid immediately following the retirement of the first mortgage through the sale of the converted condominium units. With respect to the Chicago LLCs, Goldman took the unsold condominium units and transferred them from the Borrowing LLCs to new Transferee LLCs owned exclusively by Goldman and Collazo. SMF at ¶¶ 4, 12, 20, 27. Goldman undertook these transfers without ever disclosing to the Siragusas or the Employee Benefits Trust that the transfers had occurred and rendered the Borrowing LLCs without assets to repay the loans. SMF at ¶¶ 55, 58. Thereafter, Goldman mortgaged anew the transferred condominium units for additional monies, all with no disclosure to the Siragusas. SMF at ¶¶ 7, 14, 21-22, 28-29. The Chicago LLCs were used to secure monies from the Siragusas and then were left with no means by which to repay the borrowed funds.  The Chicago LLCs were the alter egos of Goldman used to perpetrate fraud at the Siragusas' expense.

With respect to the Arizona Property, Goldman used CG Development Group LLC to borrow $1 million from the Siragusas with the expressed intention to purchase the Arizona Property. SMF at ¶¶ 31-32.  Eight days after securing the monies, Goldman terminated the purchase agreement between CG Development Group LLC and the seller of the Arizona Property. SMF at ¶¶ 33-34.  Thereafter, Goldman purchased the Arizona Property through Meridian Corners LLC, an entity he also owned with Collazo. SMF at ¶ 35.  Meridian Corners LLC was formed three weeks prior to Goldman taking $1 million from the Siragusas under the guise of a loan to CG Development Group LLC. SMF at ¶ 36.  Goldman never disclosed to any of the Siragusas that the money to which they loaned $1 million did not purchase the Arizona Property. SMF at ¶¶ 37, 39, 44. Goldman did not disclose to the Siragusas that he took the monies they loaned to CG

8

Development Group LLC and gave it to Meridian Corners LLC to purchase the Arizona Property. Goldman did not disclose that CG Development Group LLC had no assets with which to repay the $1 million in loans. CG Development Group LLC was the vehicle through which Goldman perpetrated his fraud on the Siragusas to obtain $1 million. CG Development LLC was the alter ego of Goldman (and Collazo) used in this fraud scheme.

For the reasons discussed above, this Court should pierce the liability veils of each of the Borrowing LLCs and hold Goldman personally and individually liable for all of the unpaid Siragusa loans and debts that are the subject of this dispute.

**B.      Because the LLCs were So Controlled and Their Affairs So Conducted by Goldman to be a Mere Instrumentality of Goldman and His Partner, Goldman was the Alter Ego of the LLCs.**

There is a substantive legal distinction between veil-piercing and alter ego theories. *In re: Wolf,* 595 B.R. 735, 765 (Bankr. N.D. Ill. 2018). As the Seventh Circuit explained:

> [e]fforts to pierce the corporate veil ask a court to hold A vicariously liable for B's debt .... But a contention that A is B's 'alter ego' asserts that A and B are the *same entity* ....

*Id.* (quoting *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund, et al. v. Elite Erectors, Inc., et al.,* 212 F.3d 1031,1038 (7th Cir. 2000) (emphasis in original). *See also In re: Fisher*, 296 F. App'x 494, 505-06 (6th Cir. 2008).

There are certain instances in which the corporate form can be disregarded generally, adhering to a "wholly owned" approach. *In re: Wolf*, 595 B.R.at 768 (citing *Fisher*, 296 F. App'x. at 505-06) (citation omitted). *See also People ex rel. Hartigan v. Organization Services Corp.*, 498 NE 2d 597, 600 (Ill.App.Ct 1986) ("[a] corporation with only one stockholder will be treated as his alter ego. In such cases, the court will deal with the substance of the transaction involved

9

as if the corporate agency did not exist."), *Chicago-Crawford Currency Exchange, Inc. v. Thillens, Inc.*, 199 N.E.2d 295, 299 (Ill.App.Ct. 1964) ("It has been frequently held that the owner of all of the stock of a corporation will be treated as its alter ego . . . where [the entity is] used as a protection to fraud or other illegal transactions.") (emphasis omitted)

The *Wolf* and *Fisher* cases involved single stockholders. Nevertheless, all of the Chicago LLCs at issue here were owned by the same two individuals equally—Goldman (50%) and Collazo (50%). Both individuals engaged in, schemed, perpetrated and benefited by the fraud identified above. Because there were only two stakeholders, both of whom were engaged in the fraud, the same alter ego analysis employed in *Wolf* and *Fisher* should apply here.

"[T]he decision as to whether to collapse two legal personalities into one pursuant to the alter ego doctrine is left to the discretion of the trial court." *In re: Wolf,* 795 B.R. at 768 (citing *In re: Kreisler*, 331 B.R. 364, 379 (Bankr. N.D. Ill, 2005)). For the same reasons the LLCs veils should be pierced, this court should conclude that Goldman (and Collazo) was the alter ego of each of the Chicago LLCs. Indeed, Goldman used the LLCs to attract money from third-party investors (the Siragusas) and when it served him, Goldman stripped the assets away from the Borrowing LLCs and transferred them to Transferee LLCs, also wholly owned by Goldman and Collazo. The Chicago Borrowing LLCs were used as a mere facade for the operations of Goldman (and Collazo). This Court should find Goldman to be the LLCs' alter ego and liable to the Siragusas for their unpaid debts.

With respect to the Arizona Property, Goldman used CG Development Group LLC to borrow $1 million from the Siragusas with the expressed intention to purchase the Arizona Property. Eight days after securing the monies, Goldman terminated the Purchase Agreement

between CG Development and the seller of the Arizona Property.  Instead, Goldman purchased the Arizona Property through Meridian Corners LLC, an entity he also owned with Collazo. Meridian Corners LLC was formed three weeks prior to Goldman taking $1 million from the Siragusas.  Goldman never disclosed to any of the Siragusas that the money to which they loaned $1 million did not purchase the Arizona Property.  Goldman did not disclose to the Siragusas that he took their monies and gave all of it to Meridian Corners LLC to purchase the property.  Goldman did not disclose that the Borrowing LLC had no assets with which to repay the $1 million in loans. CG Development Group LLC was the vehicle through which Goldman perpetrated his fraud on the Siragusas to obtain $1 million.  CG Development LLC was the alter ego of Goldman (and Collazo) used in this fraud scheme.

**C.** **Because Goldman Committed Actual Fraud and Injured Entities or the Siragusas' Property, Goldman's Debts to the Siragusas Should be Excepted from Discharge.**

**1. The Debts are Excepted from Discharge Under *§523(a)(2)(A).***

Under *§*523(a)(2)(A), "actual fraud" encompasses a wide spectrum of circumstances and consists of "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]" *Grant v. Hanson (In re Hanson)*, 437 B.R. 322, 327 (Bankr. N.D. Ill. 2010) (*citing McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) ("no definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated")).

"A transfer made…by a debtor is fraudulent as to a creditor…if the debtor made the transfer…: (1) with actual intent to hinder, delay or defraud any creditor of the debtor…." 740 ILCS §160/5(a); *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 731 (Bankr. N.D. Ill.

11

2006). Section 5 of the Uniform Fraudulent Transfer Act is analogous to 11 U.S.C. §548(a)(1)(A). *Id.* "Fraud in fact," or actual fraud, occurs when the debtor transfers property with the intent to hinder, delay or defraud his creditors. *Id.* at 732 (*citing Bay State Milling Co. v. Martin (In re Martin*), 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992)).

Certain "badges of fraud" from which an inference of fraudulent intent may be drawn include: (1) the transfer…was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the debtor removed or concealed assets; (4) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred; (5) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (6) the debtor transferred the essential assets of the business to lienor who transferred the assets to an insider of the debtor. 740 ILCS §160/5(b); *Knippen*, 355 B.R. at 732. When these "badges of fraud" are present in sufficient number, there is an inference or presumption of fraud. *Id. (citing Steel Co. v. Morgan Marshal Indus., Inc.,* 662 N.E.2d 595, 602 (Ill.App.Ct. 1996)).

Here, Goldman transferred unsold units from the Seminary, Barry and Eddy Projects to new entities – Art-Man Investments, GoCo Investments and PRJ Properties. SMF at ¶¶ 4, 12, 20, 27. It is uncontroverted that Goldman and his partner were the sole and exclusive owners of the Transferee LLCs. SMF at ¶¶ 11, 26, 46. It is uncontroverted that the Transferee LLCs paid no consideration for the properties and assets they received. SMF at ¶¶ 55, 59. Goldman intended to transfer the unsold units in each of the Projects so as to misrepresent their debt status to obtain additional loans or attract other investors, leaving the Borrowing LLCs with no assets with which to pay the Siragusas. SMF at ¶¶ 6-7, 14, 21-22, 28-29.

12

The *Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 355 (2016)[5] case is instructive. Ritz was the director and part owner of Chrysalis Manufacturing Corp. Chrysalis incurred a debt to Husky International Electronics, Inc. ("Husky") of approximately $164,000. Ritz drained Chrysalis of assets available to pay the debt by transferring large sums of money to other entities Ritz controlled. *Husky*, 578 U.S. at 355. The District Court held Ritz personally liable under state law on veil piercing grounds but concluded the debt was not "obtained by…actual fraud" under §523(a)(2)(A). The Fifth Circuit affirmed holding a misrepresentation from a debtor to a creditor is a necessary element of "actual fraud." The Supreme Court reversed concluding the term "actual fraud" in §523(a)(2)(A) encompasses fraudulent conveyance schemes even where no false representation is made. *Husky*, 578 U.S. at 355.

The *Husky* Court began its analysis of §523(a)(2)(A) by noting the "term 'actual fraud'…encompasses forms of fraud, like fraudulent conveyance schemes that can be effected without a false representation." *Husky*, 578 U.S. at 359. Notably, "the common law also indicates that fraudulent conveyances, although a 'fraud,' do not require misrepresentation from a debtor to a creditor." *Id* at 362. The Court added "fraudulent conveyances typically involve 'a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration." *Id.* at 361 (internal quotation omitted). The *Husky* Court found that for purposes of §523(a)(2)(A), "'actual fraud'… encompass[ed] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Id*.

As in *Husky*, the fraudulent conveyances here are not dischargeable. First, Goldman is liable for the debts of the limited liability companies. Discussion, *supra*. Goldman's contract

---

[5] This case was decided by the Supreme Court after the *Collazo* trial, decision and appeal.

debts to the Siragusas are not dischargeable insofar as the assets (unsold condominium units) from which the Siragusas were to have their loans repaid were transferred to other limited liability companies, owned exclusively by Goldman and his partner.  They were fraudulent conveyances insofar as the condominium units were transferred by one entity exclusively owned by Goldman (and Collazo) to another entity exclusively owned by Goldman (and Collazo) for no consideration. The assets were transferred not only to insiders, but to themselves. Goldman retained control of the assets and never disclosed their transfer to the Siragusas.

The fraudulent conveyance involving the Arizona Project is even more egregious.  Eight days after securing $1 million, Goldman terminated the Purchase Agreement between CG Development Group LLC and the seller of the Arizona Property.  That same day, Goldman purchased the Arizona Property through Meridian Corners LLC, an entity he also owned with Collazo.  Meridian Corners LLC was formed three weeks prior to Goldman taking $1 million from the Siragusas but was never disclosed.  Because each of the Notes Goldman signed expressly indicated the Siragusas were to be paid in full after obligations to the first mortgagee were satisfied, Goldman orchestrated the transfers (of condominium units, money or both) with the intention of defrauding the Siragusas.  The contract debts for which Goldman is liable should be excepted from discharge.

### 2. The Debts are Excepted from Discharge Under *§523(a)(6)*.

Goldman's obligations to the Siragusas are also not dischargeable under §523(a)(6).  To except a discharge under  § 523(a)(6), one must prove: (1) that the debtor acted in a way to cause an injury to the creditor or the creditor's property, (2) that the debtor acted willfully, and (3) that the debtor acted maliciously. *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 722 (Bankr. N.D.

14

Ill. 2002).  §523(a)(6) covers debts "for willful and malicious injury." *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (discussing injuries resulting from intentional torts).  Here, Goldman committed intentional injury to the Borrowing LLCs when he stripped them of their assets and left them unable to satisfy their obligations to the Siragusas.  Goldman also committed intentional injury to the Siragusas' property when he took their $1 million, failed to purchase the Arizona Property through CG Development (the Borrower LLC) and gave it to Meridian Corner LLC to close the acquisition.  In addition to  actual fraud, Goldman's contract debts to the Siragusas are not dischargeable under §523(a)(6).

WHEREFORE, for the reasons discussed above, the Siragusas respectfully request this Court enter an Order:

(a)     piercing 2801 Seminary LLC, 643 Barry LLC, 1300 Eddy LLC and CG Development Group LLC to hold Goldman personally and individually liable for the Siragusa debts;

(b)     finding Goldman to be the alter ego of 2801 Seminary LLC, 643 Barry LLC, 1300 Eddy LLC and CG Development Group LLC and liable to the Siragusas for their debts;

(c)     finding the fraudulent transfers by Goldman to be actual fraud excepted from discharge under §523(a)(A)(2);

(d)     finding that Goldman acted willfully and maliciously when he caused injury to the Borrowing LLCs and the Siragusas excepting from discharge the Siragusa debts under §523(a)(6);

(e)     setting this matter for computation of damages related to the Siragusa debts, plus interest; and

(f)     for such other and further relief as the Court deems appropriate.

Respectfully submitted,

**ROBERT SIRAGUSA, individually and as Trustee, DANA SIRAGUSA and ROBERT JOSEPH SIRAGUSA**

By: _/s/ Patrick G. Cooke_
Patrick G. Cooke (ARDC No. 6229059)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611
(312) 321-9100
pcooke@smbtrials.com

## CERTIFICATE OF SERVICE

I hereby certify that on **July 29, 2025**, I electronically filed the foregoing with the Bankruptcy Court using the CM/ECF system, which will automatically send copies to any attorney of record in the case.

[✓]Under penalties as provided by law, the undersigned certifies that the statements set forth in this Certificate of Service are true and correct.


<u>      */s/  Patrick G. Cooke*             </u>